William A. FOSTER, Jr.,
Plaintiff-Appellant,

and

Insurance Company of North America, Plaintiff,

v.

James R. PEDDICORD,
Defendant-Appellee.

William A. FOSTER, Jr.; Insurance Company of North America, Plaintiff-Appellee,

v.

James R. PEDDICORD,
Defendant-Appellant.

Nos. 86–2663, 87–2509.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1987.

Decided Aug. 26, 1987.

Joseph Francis Lentz, Jr. (Lentz, Hooper, Jacobs & Blevins, P.A., on brief), Thomas A. Montminy (Douglas B. Schoettinger; Smith, Somerville & Case, Baltimore, Md., on brief), for plaintiff-appellant.

William Gregory Montgomery, Thomas B. Eastman, Randall C. Coleman, Ober, Kaler, Grimes & Shriver, Baltimore, Md., on brief, for defendant-appellee.

Before SPROUSE and WILKINS, Circuit Judges, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINS, Circuit Judge:

William A. Foster, Jr. (Foster) appeals the dismissal by the district court of his admiralty claim against James R. Peddicord (Peddicord) for lack of subject matter jurisdiction. Peddicord appeals the denial of his motion to dismiss Foster's remaining diversity claim and the subrogation claim of Insurance Company of North America (INA) as time-barred. We affirm.

## I.

On July 3, 1983 Foster was a guest aboard a pleasure boat owned by Peddicord for a work-related recreational outing on a tributary of the Chesapeake Bay. During the outing Peddicord anchored the boat away from shore. In the course of swimming Foster dove from the boat, struck bottom and was injured. On June 2, 1986 Foster reached an "Agreement of Final Compromise and Settlement" with his employer on a workmen's compensation claim arising from his injury. The claim was paid the same day by the employer's compensation carrier, INA.

On June 18, 1986 Foster filed suit against Peddicord in federal district court, alleging the court's jurisdiction to be based on admiralty and diversity. INA filed an intervening subrogation claim on August 13, 1986 for the monies paid to Foster. On September 10, 1986, after the Maryland three-year statute of limitations had run, Peddicord filed a motion to dismiss both complaints, contending that the claims

were time-barred. On September 23, 1986 he filed an amended motion to dismiss on grounds that there was no admiralty jurisdiction. The motion was granted as to the contention that there was no admiralty jurisdiction, but denied as to the statute of limitations argument. The district court then certified its rulings for an interlocutory appeal pursuant to 28 U.S.C.A. § 1292(b) (West Supp.1987).

## II.

Peddicord contends that the district court erred in not dismissing the negligence claim of Foster, as well as INA's related subrogation claim, because the Maryland statute of limitations expired as to both Plaintiffs before a claim was *properly* filed. The Maryland statute of limitations, applicable to the instant action, allows a plaintiff to file suit within three years from the date he knew, or should have known, of the wrongs underlying his claim. Md. [Cts. & Jud.Proc.] Code Ann. § 5–101 (1974, 1984 Repl.Vol.); *see also Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677, 680 (1981).

It is uncontested that Foster filed a complaint on June 18, 1986 before the limitations period expired on July 3, 1986. However, it was also filed within two months of the settlement and award under the workmen's compensation claim against his employer. Peddicord thus argues that under Md.Ann.Code art. 101, § 58 (1957, 1985 Repl.Vol.), as interpreted by the courts of Maryland, an employer or its insurer (here, INA) has the "exclusive" right to file an action during the two months immediately following settlement of a workmen's compensation claim. The pertinent portion of the Maryland statute reads as follows:

Where injury or death for which compensation is payable under this article was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee ... may proceed either by law against that other person to recover damages or against the em-

ployer for compensation under this article ... and if compensation is claimed and awarded or paid under this article, any employer, if he is self-insured, [or] insurance company ... may enforce for their benefit, as the case may be, the liability of such other person; provided, however, if damages are recovered in excess of the compensation already paid or awarded to be paid under this article, ... any such excess shall be paid to the injured employee.... If any such employer, [or] insurance company ... shall not, within two months from the passage of the award of this Commission, start proceedings to enforce the liability of such other person, the injured employee ... may enforce the liability of such other person, provided, however, that if damages are recovered ... the employer, [or] insurance company ... shall be reimbursed for the compensation already paid or awarded....

Md.Ann.Code art. 101, § 58.

Peddicord argues that because Foster brought suit at a time during which the insurer or employer had an "exclusive" right to do so, the filing was a nullity. As the issue is framed by Peddicord in his brief, "[t]he complaint ... should have been dismissed since at the time the action was filed [Foster] had no legal capacity to file the suit" and the statute of limitations expired before an action was timely refiled by either Foster or INA.

Peddicord relies primarily on the recent case of *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 492 A.2d 1286 (1985). Language from that opinion indicates that if a third-party action is not brought until after an award of compensation, the subrogation priorities set forth under Section 58 above mean that "the right of action given by the section to the employer or insurer should be exclusive for two months after the award of the [Commission]." *Smith*, 492 A.2d at 1290 (quoting *State ex rel. Mayor and City Council of Baltimore v. Francis*, 151 Md. 147, 152, 134 A. 26, 28 (1926)). The interpretation that Peddicord would have us give to this language is, under the circumstances, unsupportable.

In *Smith* the Maryland Court of Appeals was called upon to interpret the second paragraph of Section 58, which reads:

When any employee has a right of action under this section against a third party, the period of limitations for such action, as to such employee, *shall not begin to run* until two months after the first award of compensation made to such employee under this article, and this section shall apply to past and future rights of action under this section.

Md.Ann.Code art. 101, § 58 (emphasis added). This portion of the statute appears to provide substantially different limitation periods for the same injury, depending upon (1) whether the accident was or was not work-related, (2) whether and when an injured party filed a claim for workmen's compensation, and (3) whether that claim was successful. The plaintiffs in *Smith* essentially argued that the statute did in fact provide for such different periods of limitation. *Smith*, 492 A.2d at 1291–94. The Maryland court rejected this reading of the statute and instead construed the paragraph as merely a "tolling" provision to recoup the time an employee *might* lose as a result of not initiating an action within the two-month period after a compensation claim was paid:

We therefore conclude that the limitations problem addressed by § 58 ¶ 2 is that limitations on a cause of action which accrued upon consummation of the tort or discovery could expire during the two months following award while the employer has the exclusive right to institute the third-party action. During that two months the employer might fail to sue despite the employee's desire to sue. We therefore construe the second paragraph to effect, "as to such employee," a tolling of the otherwise applicable statute of limitations during the two months after award when the employee is excluded from instituting a third-party action. Thus "the period of limitations for such action, as to such employee, shall not [resume or] begin to run [again] until two months after the first award of com-

pensation made to such employee under this article...."

*Smith,* 492 A.2d at 1294.

In this case, it is the converse of the situation discussed in *Smith* that has occurred. INA, the insurer, did not "fail to sue despite the employee's desire to sue." Rather, Foster, the employee, initiated the action for the benefit of *both* himself and the insurer in order to preserve rights and priorities that the Maryland statute was plainly intended to protect:

> [P]resent § 58 is for the benefit of the employer or insurer and the injured employee or his dependents; *it is not for the benefit of the negligent third party.* The statute does not create the right of action, but merely creates or preserves the right of subrogation for the benefit of the employer and employee as their interests may appear. *The procedural priorities established are for the protection of those interests alone.*
>
> Because the claim of the employer against the third party is by way of subrogation to the rights of the injured worker, the employer has no independent standing to sue the third party. Section 58 seems expressly to require compensation to have been both "claimed and awarded or paid" before standing can arise in the employer. The injured worker, however, may institute a third-party action prior to an award of compensation without foregoing all right to compensation. In cases where the worker files a third-party action prior to an award of compensation, *"[t]he purpose of [present § 58] is fully gratified so long as the employer or insurer is afforded an opportunity to intervene and control the conduct of the action, to the same extent as if they had instituted it, and obtain reimbursement out of any recovery."*

*Smith,* 492 A.2d at 1290 (citations omitted) (quoting *Johnson v. Miles,* 188 Md. 455, 460, 53 A.2d 30, 32 (1947)) (emphasis added).

Clearly an insurer or employer could expressly or by implication waive the right to sue during the two-month period of "exclu-sivity," choosing instead to intervene in the proceedings brought by the employee. As *Smith* plainly states, the right is for the benefit of employer or insurer (and employees and their dependents), not for the benefit of the third-party tortfeasor and, as with any right, the party who holds it may choose to forego its exercise, or to determine the manner in which it is exercised.

In the instant case, we need not address those circumstances under which it might be reasonable to infer that an insurer (or employer) has tacitly waived its right to sue. After Foster filed his action, INA dispelled any doubt as to its position when it filed a motion to intervene in the pending proceedings. Therefore, Foster's action on June 18, 1986, ratified by the intervention of INA in the proceedings, was proper and was brought in timely fashion before the statute of limitations had expired. Any other conclusion would be inconsistent with the purposes of statutes of limitation. *Decker v. Fink,* 47 Md.App. 202, 422 A.2d 389, 391–92 (1980).

■ Peddicord also argues that because INA's intervening complaint was filed after expiration of the original or the "tolled" limitations period, INA's claim too should be time-barred. This argument is equally without merit. Because INA's action in intervention, filed on August 13, 1986, was based upon its subrogation interest in Foster's claim, there was a community of interest between the claims of INA and Foster sufficient to allow INA's filing to "relate back" to the claim initiated by Foster. *Marsh v. U.S.,* 97 F.2d 327, 330 (4th Cir. 1938); *United States v. Middleton,* 3 F.2d 384, 392 (4th Cir.1924), *cert. denied,* 267 U.S. 603, 45 S.Ct. 463, 69 L.Ed. 809 (1925); *DeFranco v. United States,* 18 F.R.D. 156, 159–62 (S.D.Calif.1955). Therefore, the claim of INA is deemed to have been timely filed.

### III.

■ Foster argues that the district court erred in dismissing his claim of unseaworthiness for lack of admiralty jurisdiction. We disagree.

Article III, section 2 of the United States Constitution provides that the judicial pow-

er of the United States shall extend to "all cases of admiralty and maritime jurisdiction." However, the framers of the Constitution did not undertake to define the precise limits of admiralty and maritime jurisdiction or to lay down criteria for drawing the boundaries between admiralty and local law, but instead left this to judicial interpretation consistent with the purposes of article III, section 2. *Detroit Trust Co. v. The Thomas Barlum,* 293 U.S. 21, 43, 55 S.Ct. 31, 38, 79 L.Ed. 176 (1934). The federal judiciary has therefore fashioned a large part of the existing law that governs admiralty.

In *Executive Jet Aviation v. Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court departed from the strict "historic view" that location or "situs" alone determines admiralty jurisdiction, and concluded that a mechanical determination of whether the wrong was "located" on navigable waters had given rise to unpredictable and "absurd" results:

> Other serious difficulties with the locality test are illustrated by cases where the maritime locality of the tort is clear, but where the invocation of admiralty jurisdiction seems almost absurd. If a swimmer at a public beach is injured by another swimmer or by a submerged object on the bottom, or if a piece of machinery sustains water damage from being dropped into a harbor by a land-based crane, a literal application of the locality test invokes not only the jurisdiction of the federal courts, but the full panoply of the substantive admiralty law as well. In cases such as these, some courts have adhered to a mechanical application of the strict locality rule and have sustained admiralty jurisdiction despite the lack of any connection between the wrong and traditional forms of maritime commerce and navigation. *Other courts, however, have held in such situations that a maritime location is not sufficient to bring the tort within federal admiralty jurisdiction, but that there must also be a maritime nexus—some relationship between the tort and traditional maritime activities, involving navigation or commerce on navigable waters.*

*Executive Jet,* 409 U.S. at 255–56, 93 S.Ct. at 498 (footnote omitted) (emphasis added).

The Court in *Executive Jet* adopted what is now known as the "nexus" test of admiralty jurisdiction. It concluded that the fact that a jet fell into navigable waters, rather than upon land, "alone is not a sufficient predicate for admiralty jurisdiction in aviation tort cases." *Id.* at 261, 93 S.Ct. at 501. In doing so, the Court relied considerably on the reasoning of the Sixth Circuit in *Chapman v. City of Grosse Pointe Farms,* 385 F.2d 962 (6th Cir.1967), which had applied the test to deny admiralty jurisdiction to a swimmer injured at a public beach.

After *Executive Jet* there were questions as to the scope of its application. The opinion appeared in part to be a narrow one, limited to aviation tort cases. There was also a question as to whether the "maritime activity" involved had to be of a "commercial" nature, as had previously appeared to be the general rule. *See Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 680, 102 S.Ct. 2654, 2661, 73 L.Ed.2d 300 (1982) (Powell, J., dissenting).

In *Richards v. Blake Builders Supply,* 528 F.2d 745 (4th Cir.1975), this court returned to the issues of *Executive Jet* in two consolidated appeals. These cases arose from accidents involving pleasure craft, one in which an explosion on board a boat after a stop for refueling killed one person and seriously injured others, and the other in which a boat in operation suddenly swerved into the bank of a river injuring an occupant. Although the vessels involved were purely recreational, this court concluded that there was admiralty jurisdiction:

> In these cases, the business of commercial shipping has no presence, but *these small pleasure boats were certainly vessels in navigation, and the controversy arose out of their navigation.* There is thus a maritime connection.... [T]he operation of these boats was within the admiralty jurisdiction and the new rule as stated in *Executive Jet.*

*Richards,* 528 F.2d at 749 (emphasis added).

In *Foremost,* a case which arose from a collision between two pleasure boats operating on a navigable river, the Supreme Court clarified that the "nexus" test is *not* limited only to aviation tort cases. The Court further held that admiralty jurisdiction could be extended to cases of craft involved in noncommercial activity if the vessels were operating upon navigable waters *and* if the activity in question otherwise constituted traditional maritime activity. *Foremost,* 457 U.S. at 674, 102 S.Ct. at 2658. The opinion stated, however, that "[n]ot every accident in navigable waters that might disrupt maritime commerce will support federal admiralty jurisdiction," *Id.* at 675, n. 5, 102 S.Ct. at 2658, n. 5; "claims by swimmers injured by ... submerged objects in shallow waters," *Id.* at 674, n. 4, 102 S.Ct. at 2658, n. 4, gained no more ground under the Court's analysis in *Foremost* than under *Executive Jet.*

Since *Foremost,* this court has stated that in cases involving pleasure craft "the proper emphasis is on the navigation of the pleasure boat involved." *Oliver by Oliver v. Hardesty,* 745 F.2d 317, 320 (4th Cir. 1984). From this emerged the language upon which Foster now erroneously relies. In *Souther v. Thompson,* 754 F.2d 151, 153 (4th Cir.1985), this court indicated that it is not sufficient for a claimant to "bootstrap" his way into federal court by pretextual allegations of navigational error:[1]

> Unlike *Foremost* and *Oliver,* the controversy in this case does not arise out of an alleged navigational error such as occurs when a pleasure craft collides with a swimmer, water skier, reef, or another vessel. In his complaint K. Souther failed to make any factual allegations that the operator of the boat had violated a navigational rule. The alleged negligence was the operator's failure to stop the boat when Thompson started spraying K. Souther with water. This factual

situation is indistinguishable from *King v. Testerman,* [214 F.Supp. 335 (E.D. Tenn.1963)] the case mentioned by the Supreme Court in *Executive Jet* as an example of facts which should not fall within admiralty jurisdiction. The claim of K. Souther, a water skier, against Thompson, the other water skier towed by the same boat, is similar to the example in which the Supreme Court considered the invocation of admiralty jurisdiction to be almost absurd.

*Souther,* 754 F.2d at 153.

The recent decision of this court in *Oman v. Johns-Manville Corp.,* 764 F.2d 224 (4th Cir.1985), further guides application of the "nexus" test. Under the analysis in *Oman,* four factors should be considered in determining whether the alleged wrongs satisfy the nexus test of *Executive Jet:*

(1) the functions and roles of the parties;

(2) the type of vehicles and instrumentalities involved;

(3) the causation and type of injury; and

(4) traditional concepts of the role of admiralty law.

*Oman,* 764 F.2d at 230.

Foster's position is not enhanced by virtue of the trial judge's decision not to articulate his formal analysis using this test. Our review of the facts clearly shows that the nexus requirement was not satisfied. *See Hassinger v. Tideland Electric Membership Corp.,* 781 F.2d 1022, 1028 (4th Cir.1986).

As indicated previously, the relationship of the parties was primarily recreational, with business-related overtones. Peddicord was the owner of a pleasure craft and Foster was his guest. To move from this to an analogy of the relationship between a captain of a merchant vessel and his passengers or crew members is simply inappropriate under these circumstances.

---

**1.** Our decision in *Hogan v. Overman,* 767 F.2d 1093 (4th Cir.1985), is inapposite to the facts of this case. In *Hogan,* defendant's counsel conceded that the averment in question could be construed as a general allegation of navigational error, *Id.* at 1094, and the plaintiff supplemented his pleading with an affidavit that detailed specifics of the manner in which the boat was operated negligently. *Id.,* n. 1. Here, as in

*Souther,* Foster has attempted to recite only a litany of *omissions* in an effort to create a federal claim from a particular class of injury, swimmers hitting submerged objects, that has a maritime locality, but "absolutely no connection to maritime activity." *Hogan,* 767 F.2d at 1094 (quoting *Foremost,* 457 U.S. at 674, n. 4, 102 S.Ct. at 2658, n. 4).

While the vehicle involved was a boat, we agree with the district court's conclusion that it might just as easily have been a fixed diving platform for the purpose to which it was put. As such, the structure and the accident "had no more connection with the ordinary stuff of admiralty than do accidents on piers." *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 360, 89 S.Ct. 1835, 1839–40, 23 L.Ed.2d 360 (1969) (stationary drilling platforms did not constitute "vessels" subject to admiralty jurisdiction).

The injury in this case occurred when Foster dove from the boat and hit bottom in shallow water. To conclude that the location where Peddicord parked his boat constituted "navigational error" and that this in turn was the cause of the injury, would reflect neither a reasonable definition of navigation nor common sense. *See The Silvia,* 171 U.S. 462, 466, 19 S.Ct. 7, 8, 43 L.Ed. 241 (1898).

Finally, we consider the traditional concepts of the role of admiralty law, "the most important factor" according to our decision in *Oman,* 764 F.2d at 231. Admiralty has been traditionally concerned with federalism, uniformity, and the regulation of navigable waterways, as well as the specifics of "maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage." *Executive Jet,* 409 U.S. at 270, 93 S.Ct. at 505.

Reduced to its essence, this case is about swimming and diving, and an unfortunate accident that resulted in the course of a recreational outing in which a pleasure boat was used as a diving platform. It is not about piloting, shipping, or navigational error, or other aspects of traditional maritime activity. There is simply no predicative relationship upon which an otherwise typical tort claim[2] may properly be described as relating to "matters with which admiralty is basically concerned." *Executive Jet,* 409 U.S. at 270, 93 S.Ct. at 505. We hold that these circumstances do not invoke federal admiralty jurisdiction.[3] The decision of the district court in dismissing the unseaworthiness claim is accordingly affirmed.

AFFIRMED AND REMANDED.

---

**2.** Because there is diversity between the original parties to the action, it would not be entirely accurate to describe the matter as essentially a *state* tort claim. However, on remand the district court will of course apply the substantive law of the forum state of Maryland as to the negligence action. Thus, for all practical purposes the claim litigated will be of state rather than federal origin.

At oral argument counsel for Foster conceded that the reason for attempting to come within the court's admiralty jurisdiction is that Maryland follows the doctrine of contributory negligence as a bar to recovery, *see Harrison v. Montgomery County Board of Education,* 295 Md. 442, 456 A.2d 894 (1983), while in admiralty the doctrine of comparative negligence prevails.

*Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). The allegations of Peddicord's answer, which if true would apparently be of some concern to Foster at trial, at least appear to raise significant issues of Foster's own contributory negligence in bringing about his injuries. Thus, under traditional admiralty concerns of federalism, it would seem inappropriate for us to encourage forum-shopping by the manner in which jurisdictional rules are applied.

**3.** We do not suggest that the act of diving from a boat could never provide a nexus for the exercise of admiralty jurisdiction. Under certain circumstances this activity could bear a relationship to navigational conduct.