**In the Matter of the Complaint of Benjamin BIRD, as Owner of the VESSEL REALITY for Exoneration from or Limitation of Liability.**

No. 2:92–286–18.

United States District Court,
D. South Carolina,
Charleston Division.

June 1, 1992.

David M. Collins, Charleston, S.C., for plaintiff.

Paul F. Tecklenburg, Charleston, S.C., G. Lance Morris, Greenville, S.C., for defendant.

## ORDER

NORTON, District Judge.

This matter is before the court for consideration of claimant Hall Eskew's motion to dismiss this action for lack of subject matter jurisdiction.

## BACKGROUND

Benjamin Bird is the owner of a thirty-four foot Wellcraft power boat named REALITY. On August 3, 1991, Mr. Bird, Hall Eskew, Gregg Highland, and two unnamed women boarded REALITY for a pleasure voyage. The group anchored the REALITY in the shallow water near a tributary of the North Edisto River and, while the boat was anchored, Mr. Highland allegedly pushed Mr. Eskew overboard, causing Mr. Eskew to suffer injuries. Mr. Eskew notified Mr. Bird that he held him responsible for his injuries because Mr. Bird negligently permitted Mr. Highland to board the vessel even though Mr. Bird knew that Mr. Highland drank excessively and was thus a potential danger to other passengers on the vessel.

After receiving notice of Mr. Eskew's claim, Mr. Bird instituted the instant action for declaratory and injunctive relief pursuant to the Limitation of Liability Act of 1815, 46 U.S.C.App. §§ 183–189. He asserts that this court has maritime tort jurisdiction over this action under 28 U.S.C. § 1333(1). Mr. Eskew, the only known claimant, moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

## ANALYSIS

Mr. Bird claims that this court has subject matter jurisdiction over this limitation of liability action pursuant to 28 U.S.C. § 1333(1), which grants to federal district courts jurisdiction over cases containing admiralty and maritime claims. Mr. Eskew asserts that this action must be dismissed because this court does not have admiralty jurisdiction under the rules promulgated by the Supreme Court.

### A. *Legal History*

In *The Plymouth*, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1865), the Supreme Court clarified the rule to be used by federal courts when determining whether they have admiralty jurisdiction over tort actions. The Court set forth what is commonly referred to as the "locality test"—a bright line rule that conferred upon federal courts admiralty jurisdiction over any tort action in which the tort occurred on the high seas or navigable waters. *Id.*, 70 U.S. (3 Wall.) at 36. "According to this test, the border between State tort law jurisdiction and Federal maritime jurisdiction was as easy to trace as the border between the land and the sea." *Torres v. City of New York*, 177 A.D.2d 97, 581 N.Y.S.2d 194, 197 (1992). Some courts balked at using the locality test exclusively to determine maritime tort jurisdiction, finding that to do so would create inconsistent and illogical results in some instances. *See, e.g., Peytavin v. Gov't Employees Ins. Co.*, 453 F.2d 1121 (5th Cir.1972); *Chapman v. City of Grosse Pointe Farms*, 385 F.2d 962 (6th Cir.1967); and *Campbell v. H. Hackfeld & Co.*, 125 F. 696 (9th Cir. 1903) (where the courts required, in addition to satisfaction of the locality test, satisfaction of a maritime nexus test).

Although the locality test was the subject of much criticism over many years, it was not until 1972, in the case of *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), that the Supreme Court reconsidered the usefulness of the locality rule. In *Executive Jet*, the Supreme Court declined to rely on the locality test exclusively in determining maritime tort jurisdiction, instead choosing to adopt an additional maritime nexus requirement. *Id.*

In *Executive Jet*, an aircraft crashed into the navigable waters of Lake Erie after striking a flock of sea gulls while taking off. The Supreme Court, limiting its ruling to cases involving aviation torts, held that jurisdiction was lacking despite the fact that the crash had taken place in navigable waters because "the wrong [did not] bear a

significant relationship to traditional maritime activity." *Executive Jet* at 266–68, 93 S.Ct. at 503–04. Although the Court limited its holding to aviation torts, some courts applied the new nexus requirement more broadly. *See, e.g., Kelly v. Smith*, 485 F.2d 520 (5th Cir.1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).

Ten years later, in *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), the Supreme Court expanded its holding in *Executive Jet* in two ways. First, the Court extended its maritime nexus test to encompass all cases involving the determination of maritime tort jurisdiction. *Id.* at 673–74, 102 S.Ct. at 2657–58. Second, the Court added another prong to the nexus test, holding that the injury must have a potentially disruptive impact on maritime commerce. In so holding, the court emphasized that a substantial relationship with *commercial* maritime activity is not necessary to a finding of maritime jurisdiction. *Id.* at 674–75, 102 S.Ct. at 2658.

In *Foremost*, two pleasure boats collided in navigable waters. Finding admiralty jurisdiction to exist, the Court held that when a "potential hazard to maritime commerce arises out of activity that bears a substantial relationship to traditional maritime activity, ... admiralty jurisdiction is appropriate." *Id.* at 675 n. 5, 102 S.Ct. at 2658 n. 5. The Court found that navigation of the boats constituted an activity that bore a substantial relationship to traditional maritime activity. *Id.* at 677, 102 S.Ct. at 2659.

After *Foremost* was decided, the lower courts struggled with the meaning of the nexus requirement, and some circuits devised their own tests for determining whether the requirement was satisfied. *See In re Complaint of Sisson*, 867 F.2d 341, 345 (7th Cir.1989), *rev'd*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) (where the court held that the activity must be commercial or involve navigation in order to satisfy the nexus test) and *Kelly* at

525 (where the court adopted a four-part test to determine whether the nexus requirement is satisfied). In *Oman v. Johns Manville Corp.*, 764 F.2d 224, 230 (4th Cir.), *cert. denied*, 474 U.S. 970, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985), the Fourth Circuit stated that at a minimum, the four factors developed by the Fifth Circuit in *Kelly* should be considered when determining whether the nexus requirement is met in a particular case.[1] The *Kelly* factors are: (1) the function and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and type of injury; and (4) traditional concepts of the role of admiralty law.

In 1990, the Supreme Court had occasion yet again to clarify its so-called "locality-plus" test. *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). In *Sisson*, a fire started on a noncommercial vessel docked at a marina and spread to other recreational vessels and the marina. No commercial vessels were docked at the marina at the time of the fire. Using *Foremost*'s three-part test, the Court found admiralty jurisdiction to exist. *Id,* 110 S.Ct. at 2898. The Court held that in addition to satisfying the locality requirement, the tort must occur on the navigable waters and the incident must have a potentially disruptive impact on maritime commerce and the activity giving rise to the incident must have a substantial relationship to traditional maritime activity in order to come under federal maritime jurisdiction. *Id.*

Thus, in essence, the Court merely restated the locality-plus test set forth in *Foremost*. However, the Court clarified the manner in which the test should be administered. Specifically, the Court directed the lower courts to abandon their fact-specific inquiries under the two-pronged nexus test, and instead make a more general inquiry. The Court held that under the first prong of the nexus test—that the incident must have a potentially disruptive impact on maritime commerce—the potential impact of a given type of incident must be determined by examining

1. In addition to the Fourth Circuit, the First, Second, Sixth, Ninth and Eleventh Circuits have

used the *Kelly* test when determining whether the nexus requirement is satisfied.

its general character. *Id.*, 110 S.Ct. at 2896. This jurisdictional inquiry is not to turn on the *actual* effects of the incident on maritime commerce, nor the particular facts of the incident that may have rendered the incident more or less likely to disrupt commercial activity. *Id.* "Rather, a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Id.* The Court found that the general features in *Sisson*—a fire on a vessel docked at a marina on navigable waters—plainly satisfied the requirement of potential disruption to commercial maritime activity. *Id.*

Likewise, the Court held that when determining whether the second prong of the nexus test is satisfied—that is, the requirement that there be a substantial relationship between the activity giving rise to the incident and traditional maritime activity—courts must define the relevant "activity" by the general conduct from which the incident arose, not by the particular circumstances of the incident. *Id.*, 110 S.Ct. at 2897. The Court explained its reason for requiring a general, rather than fact-specific, inquiry under the second prong as follows:

> This focus on the general character of the activity is, indeed, suggested by the nature of the jurisdictional inquiry. Were courts required to focus more particularly on the causes of the harm, they would have to decide to some extent the merits of the causation issue to answer the legally and analytically antecedent jurisdictional question.

*Id.* The Court went on to find that the relevant activity in *Sisson* was not the fire, but the storage and maintenance of a vessel at a marina on navigable waters, and that the storage and maintenance of a vessel at a marina on navigable waters has a substantial relationship to a traditional maritime activity. *Id.*[2]

The Court declined Justice Scalia's invitation to abandon its two-pronged nexus test and adopt a simpler rule similar to the locality rule used prior to *Executive Jet.* Justice Scalia set forth his alternative rule in a concurring opinion, in which Justice White joined. Justice Scalia stated that he would hold that "a wrong which occurs (1) in navigable waters, (2) on a vessel, (3) while that vessel is engaged in a traditional maritime activity, bears a significant relationship to traditional maritime activity." *Id.*, 110 S.Ct. at 2902 (Scalia, J. concurring). With this case history in mind, we turn now to the question of whether this Court has subject matter jurisdiction over this case.

### B. *Jurisdiction in this Case?*

Mr. Bird argues that under the maritime nexus test as clarified in *Sisson* maritime tort jurisdiction surely exists in this case. Specifically, he argues that (1) the loss of a passenger overboard is a common marine peril with significant potential to disrupt commerce; and (2) the anchoring of a vessel in a sheltered area bears a substantial relationship to traditional maritime activity.[3]

Mr. Eskew counters that under *Foster v. Peddicord*, 826 F.2d 1370 (4th Cir.1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 753, 98 L.Ed.2d 766 (1988), a case almost identical, factually, to this case, the nexus requirement is not satisfied here. In *Foster*, a pleasure boat was at anchor in a tributary of the Chesapeake Bay when an individual dove into shallow water injuring himself. The court held:

> While the vehicle involved was a boat, we agree with the district court's conclusion that it might just as easily have been a fixed diving platform for the purpose to which it was put. As such, the structure and the accident 'had no more connection with the ordinary stuff of admiralty than do accidents on piers.'...
>
> ... The injury in this case occurred when Foster dove from the boat and hit bottom

---

**2.** The Supreme Court rejected as too limited the rule espoused by many federal courts after *Foremost* that only navigation can be characterized as substantially related to traditional maritime activity.

**3.** Neither party disputes that the "locality" requirement is satisfied in this case. That is, both parties agree that the injury at issue occurred on navigable waters.

in shallow water. To conclude that the location where Peddicord parked his boat constituted 'navigational error' and that this in turn was the cause of the injury, would reflect neither a reasonable definition of navigation nor common sense. *Id.* at 1376.

Applying the four-part test it adopted in *Oman,* the court held that no admiralty jurisdiction existed. Specifically, the court found: (1) that the relationship of the parties was primarily recreational, with business-related overtones—far from being analogous to the relationship between a captain of a merchant vessel and his passengers or crew members; (2) that although the vehicle involved was a boat, it "might just as easily have been a fixed diving platform for the purpose to which it was put," and therefore the structure and the accident were not related to admiralty; (3) the injury had nothing to do with navigational error, but instead occurred when Foster dove from the boat and hit bottom;[4] and (4) *Foster* was a case about a diving and swimming accident where a pleasure boat was used as a diving platform during a recreational outing, and not about "piloting, shipping, or navigational error, or other aspects of traditional maritime activity," and thus bore no relationship to traditional concepts of the role of admiralty law. *Id.* at 1375–1376. Mr. Eskew argues that this court must rule, consistent with the factually analogous *Foster* case, that the maritime nexus requirement is not satisfied here.

Mr. Bird counters that *Sisson* preempts the Fourth Circuit's *Oman* test and that *Sisson* implicitly either limits or overrules *Foster* and other Fourth Circuit cases narrowly defining maritime tort jurisdiction for pleasure vessels.[5] Mr. Eskew disagrees with Mr. Bird's argument that the

Fourth Circuit's line of cases are limited by *Sisson.* In support, he cites the case of *Price v. Price,* 929 F.2d 131 (4th Cir.1991), where the court stated:

> An examination of the factors which we identified in *Bubla* [*v. Bradshaw,* 795 F.2d 349 (4th Cir.1986) ] and *Oman* is still an acceptable systematic method for making the analysis. However, we must project more generally the composite genre of the tort or its essential elements in determining whether traditional maritime commerce will be affected.

*Id.* at 135. In *Price,* the plaintiff claimed that the accident at issue, which occurred when a passenger was disembarking from a pleasure boat near the shore, occurred because of errors in navigation, excessive speed and the failure to correctly approach the shore. After performing its four-factor test, the court held that "the overriding factor in this case, which brings it within the courts of admiralty, is the source of liability emanating from the navigation of a vessel, albeit a small pleasure boat." *Id.* at 136.

The *Price* decision makes it clear that the Fourth Circuit still considers its *Oman* test to be viable. However, the court appears to have altered the focus of its inquiry somewhat in an effort to conform to the Supreme Court's *Sisson* directive that courts abandon the use of fact-specific inquiries when applying the nexus test.[6]

Applying the *Oman* test to the facts in this case, the court finds that: (1) the relationship of the parties in this case was primarily recreational; (2) the vehicle involved was a pleasure boat, but at the time of the accident the boat was anchored and apparently being used as a fixed platform; (3) the injury allegedly occurred when the claimant was pushed overboard by a drunk-

---

**4.** The court explicitly noted that the injury was not caused by navigational error. It is unclear to this court whether the Fourth Circuit required that the activity which caused the injury involve navigation.

**5.** In *Sisson,* the Supreme Court addressed the continuing vitality of the various tests used by the Circuits to determine whether the second prong of the nexus test is satisfied. The Court declined to adopt any of the tests as its own,

preferring instead to stick with its own test. However, the Court did not state that the tests used by the Circuits are no longer viable. *Id.,* 110 S.Ct. at 2897–2898, n. 4.

**6.** This court questions whether it can abandon use of a fact-specific inquiry while maintaining the integrity of the *Oman* test, which, as crafted, requires a fact-specific inquiry.

en passenger, thus causing the claimant to hit bottom and injure himself and had nothing to do with navigational error; and (4) this case is about injuries that occurred as a result of drinking to excess and clowning around and had little or nothing to do with traditional maritime activity.[7]

It is apparent from this factual analysis that this court's finding is almost identical to the findings of the Fourth Circuit in *Foster*. Yet, when the facts of this case are analyzed under the *Foremost* nexus test as clarified by *Sisson*, the court is compelled to find that admiralty jurisdiction exists.

In *Sisson*, the Supreme Court held that the first prong of the nexus test is satisfied if the incident has a potentially disruptive impact on maritime commerce, but emphasized that the potential impact of a given type of incident must be determined by examining its general character—the focus should not be on the *actual* effects on maritime commerce. *Sisson*, 110 S.Ct. at 2896. In *Sisson* the incident to be analyzed was the fire. *Id.* By analogy, the court finds that the incident to be analyzed in this case is the loss of a passenger overboard.

It is obvious at first glance that a person overboard in a shallow tributary of a small river which sees very few, if any, commercial vessels, has little or no potential of disrupting commercial maritime activity. However, it is apparent from *Foremost* and *Sisson* that this court may not limit its inquiry to whether there is the potential of disruption of commercial maritime activity in the tributary, or even anywhere in the North Edisto River. The court instead must remove the scene of the accident to the busiest of maritime thoroughfares and then ask whether a passenger thrown overboard from a pleasure craft on that major thoroughfare has the potential of disrupting maritime activity.

In *Foremost,* two pleasure boats collided on a small Louisiana river that saw little or no commercial traffic. The Supreme Court held that the collision had a potentially disruptive impact on maritime commerce. *Foremost,* 457 U.S. at 677, 102 S.Ct. at 2659. In focusing on the "potential" rather than the "actual" effect on maritime commerce, the court emphasized the need for uniform rules of conduct for all vessel operators, stating, "for example, if these two boats collided at the mouth of the St. Lawrence Seaway, there would be a substantial effect on maritime commerce".[8] *Id.* at 675, 102 S.Ct. at 2658.

The fall of a passenger overboard in a seaway crowded with commercial vessels is not likely to have the amount of impact that a collision of two pleasure boats would have, for a passenger overboard can be pulled back aboard the vessel in a matter of seconds. Mr. Eskew argues that at most, it took him thirty to ninety seconds to swim back to the boat and that therefore there was no potentially disruptive effect on commerce. Although Mr. Eskew's argument is logical, it is not consistent with the Supreme Court's abstract approach to the nexus test. Under the abstract analysis, there is the "potential" that a man overboard may be lost, or severely injured so that help is needed to safely bring the man back aboard the vessel. The commotion caused by such an incident in a crowded seaway would potentially have an impact on maritime commerce. Thus, under *Foremost* and *Sisson*, this "potentiality" is sufficient to warrant satisfaction of the first prong of the nexus test.

The court must next determine whether the second prong of the nexus test is satisfied—that is, whether there is a substantial relationship between the activity giving

7. This court declines to recognize that drinking to excess aboard an anchored pleasure craft may be a traditional maritime activity.

8. Justice Powell, joined by Chief Justice Burger and Justices Rehnquist and O'Connor, dissented, finding it to be significant that the collision occurred on a river that "is seldom, if ever, used for commercial activity." *Foremost* at 678, 102 S.Ct. at 2660 (Powell, J., dissenting). Justice Powell stated further that there is "no substantial federal interest that justifies extending admiralty jurisdiction to the edge of absurdity." *Id.* Unfortunately, this court is constrained to follow the majority's decision while agreeing with the rationale of the dissent.

rise to the incident and traditional maritime activity. In so doing, the court must define the relevant "activity" by the general conduct from which the incident arose, not by the particular circumstances of the incident.

In *Sisson*, the court found the relevant activity to be the storage and maintenance of a vessel. *Sisson*, 110 S.Ct. at 2898. By analogy, this court finds the relevant activity in this case to be anchorage of the vessel in the tributary. The court finds furthermore that the anchoring of a boat in navigable waters is a traditional maritime activity and that therefore, the second prong is also satisfied. *See, e.g., Sisson* at 2902 (Scalia, J., concurring) (where Justice Scalia noted in passing that "[a] vessel engages in traditional maritime activity for these purposes when it navigates, as in *Foremost*, when it lies in dock, as in the present case, and when it does anything else (*e.g., dropping anchor*) that vessels normally do in navigable waters)." Emphasis added.

In *Crosson v. Vance*, Judge Haynsworth stated, "[t]he operation of small pleasure craft on inland waters which happen to be navigable has no more apparent relationship to [the concern for uniform laws governing commercial vessels] than the operation of the same kind of craft on artificial lakes which are not navigable waters." 484 F.2d 840, 840 (4th Cir.1973). This court agrees with Judge Haynsworth's observation, and finds it to be applicable to the instant case, for the accident that occurred here has nothing to do with maritime commerce, but is "more of the ilk of swimmers injured while playing on and near docks." *Foster* at 1376, quoting *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 360, 89 S.Ct. 1835, 1839, 23 L.Ed.2d 360 (1969).

Nevertheless, the Supreme Court apparently has decided to abandon the attempt it made in *Executive Jet* to limit admiralty jurisdiction only to those cases actually affecting maritime commerce in favor of a more inclusive rule.[9] Consequently, this court is constrained to find that the locality-plus test as clarified in *Sisson* is met and that jurisdiction exists in this case.[10] It is, therefore,

ORDERED that claimant Eskew's motion to dismiss for lack of admiralty jurisdiction be DENIED.

IT IS SO ORDERED.

---

**9.** Although the test is broad-based, it is by no means a bright line rule and therefore fails to serve as the type of clear jurisdictional rule that is so important when determining subject matter jurisdiction. *See Sisson*, 110 S.Ct. at 2902 (Scalia, J., concurring). The nexus test as defined in *Sisson* instead will invite confusion and inconsistent application on the part of lower courts seeking to apply it.

**10.** Mr. Bird also argues that because his claim of exoneration or limitation of liability is based on a federal statute, 46 U.S.C.App. §§ 183–189, this court has subject matter jurisdiction. It is true, as Mr. Bird points out, that the Supreme Court declined to decide this issue in *Sisson*. *See Sisson*, 110 S.Ct. at 2894, n. 1. However, this argument was expressly rejected by the Fourth Circuit in *David Wright Charter Serv. v. Wright*, 925 F.2d 783 (4th Cir.1991) (where the court held that the Limitation of Liability Act is not a source of jurisdiction, but is a procedure that may be invoked when general admiralty and maritime jurisdiction has been established).