Ann WRIGHT, Plaintiff,

v.

UNITED STATES of America, Defendant and Third–Party Plaintiff,

v.

Michael J. HATCHER, Third–Party Defendant.

Civ. A. No. 2:93–1625–18.

United States District Court,
D. South Carolina,
Charleston Division.

Aug. 15, 1994.

Milton Stratos, Charleston, SC, Michelle T. Delemarre, Washington, DC, for defendant and third-party plaintiff.

Harley N. Kane, Boca Raton, FL, for third-party plaintiff.

## ORDER

NORTON, District Judge.

This matter is before the court upon the Third–Party Defendant's, Michael J. Hatcher's, Motion to Dismiss for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). A hearing was held on this matter on July 14, 1994.

## I. BACKGROUND

Michael J. Hatcher (hereinafter "Hatcher") rented a pontoon boat on July 4, 1991. In order to rent this pontoon boat, Hatcher had to complete a safety course and pass a written test on the safe operation of the boat. Hatcher did this. There were certain rules and regulations that Hatcher agreed to follow and enforce, such as the rule that prohibited jumping from the boat or disembarking from the boat at places other than designated piers.

Ann Wright was a guest on the pontoon boat. Ms. Wright jumped off the boat at an unauthorized place and injured her finger. In its Third–Party Complaint, the United States argues that Hatcher failed to enforce the rules and regulations of the pontoon boat and thus his negligence or intentional conduct caused Ms. Wright's injuries.

## II. ANALYSIS

The United States claims that this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333(1), which grants to federal district courts jurisdiction over cases containing admiralty and maritime claims. Hatcher asserts that this action must be dismissed because the court does not have admiralty jurisdiction under the rules promulgated by the Supreme Court and the Fourth Circuit.

## A. Legal History

■ In accordance with the guidelines specified by the Supreme Court, admiralty jurisdiction exists in cases where the incident which forms the basis of the suit satisfies both the locus requirement (the incident occurred on navigable waters) and the nexus requirement (the incident has a substantial relationship to traditional maritime activity and has the potential to disrupt commercial maritime activity).

This court has had occasion to visit the issue of what defines the proper application of the test for admiralty jurisdiction in a previous case, *In re Bird,* 794 F.Supp. 575 (D.S.C.1992). Without reciting the thorough historical legal analysis that this court undertook in that order, the court followed the locality-plus test as clarified in *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). In *Sisson,*

> [t]he Court held that in addition to satisfying the locality requirement, the tort must occur on the navigable waters and the incident must have a potentially disruptive impact on maritime commerce and the activity giving rise to the incident must have a substantial relationship to traditional maritime activity in order to come under federal maritime jurisdiction.

*In re Bird,* 794 F.Supp. at 577 (citing *Sisson,* 497 U.S. at 367, 110 S.Ct. at 2898).

> Thus, in essence, the [*Sisson*] Court merely restated the locality-plus test set forth in *Foremost* [*Ins. Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982)]. However, the Court clarified the manner in which the test should be administered. Specifically, the Court directed the lower courts to abandon their fact-specific inquiries under the two-pronged nexus test, and instead make a more general inquiry. The Court held that under the first prong of the nexus test—that the incident must have a potentially disruptive impact on maritime commerce—the potential impact of a given type of incident must be determined by examining its general character. This jurisdictional inquiry is not to turn on the actual effects of the incident on maritime commerce, nor the particular facts of the incident that may

have rendered the incident more or less likely to disrupt commercial activity. 'Rather, a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity.'

\* \* \* \* \* \*

> Likewise, the Court held that when determining whether the second prong of the nexus test is satisfied—that is, the requirement that there be a substantial relationship between the activity giving rise to the incident and traditional maritime activity— courts must define the relevant 'activity' by the general conduct from which the incident arose, not by the particular circumstances of the incident. The Court explained its reason for requiring a general, rather than fact-specific, inquiry under the second prong as follows:

> > This focus on the general character of the activity is, indeed, suggested by the nature of the jurisdictional inquiry. Were courts required to focus more particularly on the causes of the harm, they would have to decide to some extent the merits of the causation issue to answer the legally and analytically antecedent jurisdictional question.

*Id.* at 577–78 (citations omitted).

## B. Jurisdiction in this Case?

■ The United States argues that under the maritime nexus test as clarified in *Sisson,* 497 U.S. 358, 110 S.Ct. 2892, and applied by this court in *In re Bird,* 794 F.Supp. 575, maritime tort jurisdiction surely exists in this case. Specifically, it argues that (1) the incident which forms the basis of the third-party claim against Hatcher arose from the operation of a pleasure boat on navigable waters, which is a traditional maritime activity; and (2) the incident which forms the basis of the third-party claim had the potential of disrupting traditional maritime activity.

### 1. Locus Requirement

The locus requirement is not disputed in this case. The parties agree that the incident which forms the basis of the United

States' Third–Party Complaint against Hatcher occurred on navigable waters.

### 2. Nexus Requirement

■ The nexus requirement is also satisfied. First, it is clear that the incident which forms the basis of the United States' third-party claim arose out of the operation of a pleasure boat, an activity which can only be characterized as a traditional maritime activity. Hatcher characterizes the incident as the "negligent supervision of a boat passenger," rather than the operation of a pleasure boat. The Supreme Court, however, has instructed against such fact specific characterization of the incident when courts are considering whether admiralty jurisdiction exists. Instead of analyzing the particular facts which form the basis of the claim, a court must look to the "general character" of the activity in question to determine whether it is a traditional maritime activity. *Sisson,* 497 U.S. at 362–65, 110 S.Ct. at 2896–97.

As mentioned previously, this court performed such an analysis in *In re Bird,* 794 F.Supp. 575. Specifically, in *In re Bird,* this court determined that it had admiralty jurisdiction over a claim that had been brought by an individual who had been pushed overboard by a drunken passenger. *Id.* at 575. The vessel, a pleasure craft, was at anchor near a tributary of the North Edisto River at the time of the incident. *Id.* This court noted that it declined to recognize that drinking to excess aboard an anchored pleasure craft may be a traditional maritime activity. This court adopted a more general view of the incident in question, as required by *Sisson,* and found that the relevant activity was the anchorage of a boat in navigable waters. *Id.* at 580–81. Such an activity was found to be a traditional maritime activity. *Id.* at 581.

Similarly, in this case the court must look to the general character of the incident which forms the basis of the United States' third-party claim and not the particular facts that gave rise to the incident. Viewed in general terms, the incident which forms the basis of the United States' third-party claim against Hatcher arose from the operation of a pleasure boat on navigable waters. Such an activity can only be characterized as a "tradi-

tional maritime activity." Accordingly, this aspect of the nexus requirement is satisfied.

Second, it is clear that the incident that forms the basis of the United States' third-party claim had the potential of disrupting traditional maritime activity. Ms. Wright disembarked from the pontoon boat directly into the waters of Lake Moultrie. These waters are posted "No Swimming," and are reserved for the navigation of vessels such as the pontoon boats. A swimmer in these waters clearly poses a hazard to navigation. Ms. Wright's presence in the navigable waters of the lake—whether voluntary or not—certainly had the potential to impact maritime commerce. *See In re Bird,* 794 F.Supp. 575 (a man overboard would potentially have an impact on maritime commerce).

In summary, because the locus test and the nexus test are satisfied, pursuant to the analysis followed by this court in *In re Bird,* 794 F.Supp. 575, admiralty jurisdiction is appropriate in this case. Hatcher does not cite *In re Bird* in his memorandum. Instead, Hatcher cites *Crosson v. Vance,* 484 F.2d 840 (4th Cir.1973), *Oliver v. Hardesty,* 745 F.2d 317 (4th Cir.1984) and *Souther v. Thompson,* 754 F.2d 151 (4th Cir.1985), cases which predate *Sisson* and *In re Bird,* in support of his argument that the court does not have admiralty jurisdiction over the Third–Party Complaint. Hatcher reasons that the alleged injury occurred because of the negligent supervision of a boat passenger rather than negligent operation of the boat itself. As discussed above, the Supreme Court has rejected such a fact specific analysis of the incident in question when the court is considering whether it has admiralty jurisdiction. Instead, courts were directed to consider the general character of the activity which forms the basis of the incident, *i.e.,* the navigation of pleasure craft in navigable waters, in making the jurisdictional inquiry. Hatcher's cited cases are of doubtful viability since they pre-date *Sisson,* as seen in this court's analysis in *In re Bird,* 794 F.Supp. 575.

### III. CONCLUSION

It is therefore,

**ORDERED,** that Third–Party Defendant's, Michael J. Hatcher's, Motion to Dis-

miss for lack of subject matter jurisdiction be **DENIED.**

**AND IT IS SO ORDERED.**