Terry Lee SINCLAIR

v.

SONIFORM, INC.; Harsco Corporation; Sherwood Company Division; Hill–Loma, Inc., d/b/a Hill Acme Company; Ray Murray, Inc.; William G. Fryling, individually and d/b/a Blue Water Divers; David S. Madden, Jr.; Glen Hicks,

Soniform, Inc., Harsco Corporation, Sherwood Company Division, and Ray Murray, Inc., Appellants No. 90–1905.

Terry Lee SINCLAIR

v.

SONIFORM, INC.; Harsco Corporation; Sherwood Company Division; Hill–Loma, Inc., d/b/a Hill Acme Company; Ray Murray, Inc.; William G. Fryling, individually and d/b/a Blue Water Divers; David S. Madden, Jr.; Glen Hicks,

Glen Hicks, Appellant No. 90–1906.

Nos. 90–1905, 90–1906.

United States Court of Appeals, Third Circuit.

Argued April 11, 1991.

Decided June 6, 1991.

Edward B. Joseph (argued), Goldfein & Joseph, Philadelphia, Pa., for appellants in No. 90–1905, Soniform, Inc., Harsco Corp., Sherwood Corp. Div. and Ray Murray, Inc.

Lawrence D. Wright (argued), Rawle & Henderson, Philadelphia, Pa., for appellant in No. 90–1906, Glen Hicks.

Richard L. Kremnick (argued), Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellee Terry Lee Sinclair.

William G. Fryling, pro se.

David S. Madden, Jr., pro se.

Before SLOVITER, Chief Judge, COWEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

The issue before us is whether an action arising from injuries sustained during a scuba diving excursion in navigable waters falls within federal admiralty jurisdiction. Plaintiff Terry Lee Sinclair alleges that he contracted and continues to suffer from the effects of decompression sickness due to a defect in the buoyancy compensator vest he wore while diving, as well as the failure by the crew of the vessel that transported him to the dive site to detect his symptoms and administer proper care. Alleging subject matter jurisdiction in admiralty pursuant to 28 U.S.C. § 1333(1) (1988), Sinclair filed this action in district court against the ship's crew and the manufacturers of the vest. The district court dismissed the action for lack of subject matter jurisdiction.

We hold that Sinclair's claims against the crew fall within federal admiralty jurisdiction since the crew was engaged in a quintessential maritime activity affecting commerce—the transport and care of paying passengers. Because the claims against the manufacturers of the vest arise from the same common nucleus of operative fact as do his claims against the crew, they fall within the district court's supplemental jurisdiction.

1. Specifically, Sinclair filed suit against the following parties: the owner of the scuba diving

### I.

On August 16, 1987, Sinclair and three other passengers chartered the *Destitute* to transport them to a dive site approximately nine miles off the coast of New Jersey. The crew consisted of its owner and captain, David S. Madden, Jr., and a dive master employed by Madden to supervise the dive, Glen Hicks.

After being transported to the dive site, Sinclair and a partner dove to a depth of approximately 75 feet, where they remained for about twenty-seven minutes. As he began to ascend, Sinclair initially used the "finger dump valve" on his buoyancy compensator vest to control the rate of his ascent. Noticing that he was rising faster than his partner, Sinclair pulled the "shoulder dump/rapid exhaust valve" to expel the air from his vest to slow his ascent. The rapid exhaust valve failed, and Sinclair continued to rise at an increasing rate.

Upon reaching the water surface, Sinclair needed assistance to reboard the *Destitute*. Once aboard, he began to exhibit the symptoms of decompression sickness. Commonly referred to as "the bends," decompression sickness is a disorder caused by the release of nitrogen bubbles in the tissues and blood after returning from high pressure to atmospheric pressure too rapidly. His symptoms included nausea, vomiting, dizziness, and shortness of breath. The crew administered no medical care to Sinclair, continued the dive, and did not transport Sinclair back to shore until two and one-half hours after he surfaced.

Sinclair alleges that he developed and continues to suffer from painful, disfiguring, and disabling injuries attributable to decompression sickness as a result of the defect in his buoyancy compensator vest valve and the failure of the crew to detect his symptoms and administer the appropriate care. He filed actions against the crew of the *Destitute* and the manufacturers/distributors of the vest [1] in federal dis-

shop from which he rented the buoyancy vest, William G. Fryling; a company engaged in the

trict court and the Pennsylvania Court of Common Pleas.

■ The federal action was filed pursuant to the admiralty jurisdiction of the district court under 28 U.S.C. § 1333(1). The district court initially stayed the federal action pending resolution of the state actions, in accordance with a stipulation of the parties. Upon motion by one of the defendants, the district court lifted the stay. Sinclair thereafter moved for dismissal on three grounds: (1) lack of admiralty jurisdiction, (2) voluntary dismissal under Fed.R.Civ.P. 41(a), and (3) his right to pursue a concurrent state remedy under the "saving to suitors" provision of 28 U.S.C. § 1333.[2] The district court granted Sinclair's motion to dismiss on the grounds that it lacked admiralty jurisdiction over the action, finding that an isolated recreational scuba diving excursion was unrelated to traditional maritime activity. The district court did not reach Sinclair's two other grounds for dismissal. This appeal followed. We have jurisdiction under 28 U.S.C. § 1291 (1988). Our review of the district court's determination regarding subject matter jurisdiction is plenary. *York Bank and Trust Co. v. Federal Sav. and Loan Ins. Corp.*, 851 F.2d 637, 638 (3d Cir.1988).

## II.

■ The statutory basis for federal admiralty jurisdiction is 28 U.S.C. § 1333, which provides in relevant part:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

The task of determining exactly what "admiralty or maritime jurisdiction" means has been left to the courts.

Until the 1970's courts looked only to the locality of the wrong to determine the existence of admiralty jurisdiction. A wrong was actionable in admiralty if it occurred on navigable waters. *See generally, Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253–54, 93 S.Ct. 493, 497, 34 L.Ed.2d 454 (1972) (discussing history of locality test for admiralty jurisdiction). Over the past two decades, however, the inquiry has become more sophisticated as the Supreme Court has refined the test for determining admiralty jurisdiction. Under current doctrine, the incident must have a potential impact on maritime commerce and bear a substantial relationship to traditional maritime activity, in addition to occurring on navigable waters.

These two additional requirements were established primarily through a trilogy of cases, beginning with *Executive Jet.* There the Court held that federal admiralty jurisdiction did not lie in an action arising from an airplane crash into navigable waters when the plane flew predominantly over land, because the incident did not "bear a significant relationship to traditional maritime activity." 409 U.S. at 268, 93 S.Ct. at 504. In *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), the Supreme Court extended *Executive Jet* beyond the aviation context, but held that a maritime activity need not bear a substantial relationship to a commercial activity so long as it had a potential impact on maritime commerce. *Id.* at 674–75, 102 S.Ct. at 2658. The Court held that the collision of two pleasure boats on navigable waters was cognizable in ad-

business of manufacturing, selling, and distributing scuba diving equipment including the buoyancy compensator vest model at issue, Soniform, Inc.; and three companies engaged in the business of selling and distributing scuba diving equipment, Harsco Corp., Sherwood Company Division, Hill–Loma, Inc., and Ray Murray, Inc. We refer to these parties collectively as the "manufacturers."

2. Sinclair moved to dismiss the federal action which he had initiated in order to have the action tried in state court before a jury. He contends that he always intended to have the action tried in state court, but feared that court might rule that his claims fell within exclusive federal admiralty jurisdiction. Sinclair contends that he filed in federal court right before the federal statute of limitations ran merely to maintain his ability to sue in federal court if the state court had refused to hear his claims.

miralty because it implicated the traditional maritime concern of navigation and could possibly disrupt maritime commerce.

The most recent case in this trilogy, *Sisson v. Ruby*, — U.S. —, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), held that federal admiralty jurisdiction extended to an action arising from a fire that began in the washer/dryer unit of a private yacht moored in a marina. The Court emphasized that a potential impact on maritime commerce remained a distinct requirement for admiralty jurisdiction because the "purpose underlying the existence of federal maritime jurisdiction is the federal interest in protection of maritime commerce," but held that the potential impact on commerce must be judged in terms of the general characteristics of the activity, not the particular facts of the incident or the actual effect it had. *Id.* 110 S.Ct. at 2896. The Court also held that activities other than navigation, such as the storage and maintenance of vessels at a marina on navigable waters, bear substantial relationships to traditional maritime activity. *Id.* at 2897–98.

In *Sisson*, the Supreme Court declined to provide more explicit guidance for determining whether an activity is substantially related to traditional maritime pursuits. *Id.* at 2897–98 n. 4. We will therefore rely on the four criteria we have previously adopted to guide this inquiry: (1) the functions and roles of the parties, (2) the types of vehicles and instrumentalities involved, (3) the causation and type of injury, and (4) traditional concepts of the role of admiralty law. *Edynak v. Atlantic Shipping Inc. Cie. Chambon Maclovia S.A.*, 562 F.2d 215, 221 (3d Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978) (federal maritime law applicable in action by worker struck by crane unloading freight while aboard vessel) (citing *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir.1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974)).

Having examined the general principles governing federal admiralty jurisdiction, we now turn to the issue before us—whether Sinclair's action against the crew of the *Destitute* and the manufacturers of the

buoyancy compensator vest he wore is cognizable in admiralty.

### III.

#### A.

We begin our analysis with Sinclair's claims against the crew. His claims against Madden and Hicks focus on their failure to detect the symptoms of decompression sickness and administer treatment promptly. Their purported negligence occurred while Sinclair was a passenger aboard the *Destitute*, at which time the crew was transporting passengers for compensation. There is no dispute that this activity occurred on navigable waters. We find that it also satisfies the two additional requirements of federal admiralty jurisdiction.

First, the activity of the crew affected maritime commerce both actually and potentially. The actual impact arose from the fact that the vessel itself was engaged in a commercial venture. Although less apparent, the potential impact was nonetheless significant. If the crew had been aware of Sinclair's need for immediate medical assistance, they may have signaled to other vessels in the area for assistance. The possibility that commercial vessels would be diverted to respond to such a distress signal was certainly as great as the potential relied upon by the Supreme Court in *Foremost* that commercial vessels would be diverted by the collision of two pleasure crafts. *Foremost*, 457 U.S. 668, 102 S.Ct. 2654.

Second, the transport and care of passengers bears a substantial relationship to traditional maritime activity according to all the factors we delineated in *Edynak*. Both Sinclair and the crew were engaged in the traditional maritime activity of transporting passengers for compensation. *See, e.g., Duluth Superior Excursions, Inc. v. Makela*, 623 F.2d 1251, 1253 (8th Cir.1980). The fact that Sinclair was engaged in this activity for recreational reasons does not change its maritime character. *See Foremost*, 457 U.S. at 675–76, 102 S.Ct. at 2658–59 (existence of admiralty jurisdiction does

not turn on whether vessel was used for commerce or recreation). The instrumentality involved in this activity, the *Destitute,* is obviously maritime in nature. The injuries that Sinclair attributes to the crew relate to their duty to provide adequate care to an injured passenger, which is an integral part of the carriage of passengers. The standards defining the duty of care owed to passengers relate to a traditional goal of admiralty law, the provision of a uniform body of law to provide remedy for those injured while traveling on navigable waters. *See Kelly v. Smith,* 485 F.2d 520 (5th Cir.1973). Sinclair's claims against the crew therefore fall within federal admiralty jurisdiction.

### B.

■ We look next at Sinclair's claims against the manufacturers of the buoyancy compensator vest. The manufacturers argue that the district court had direct admiralty jurisdiction with respect to the claims arising from the purported defects in the scuba diving equipment. At one extreme, the Supreme Court has characterized the application of admiralty jurisdiction to an accident involving a swimmer at a public beach as "almost absurd." *Executive Jet,* 409 U.S. at 255, 93 S.Ct. at 498. On the other hand, the incident giving rise to the instant action occurred on navigable waters and involved the activity of scuba diving, which may be sufficiently maritime in nature to invoke federal admiralty jurisdiction. However, we need not decide that issue today because Sinclair's claims against the manufacturers fall within the district court's supplemental jurisdiction. We therefore express no opinion as to whether the district court had direct jurisdiction under 28 U.S.C. § 1333.

Recently, Congress codified the existence of supplemental jurisdiction in 28 U.S.C. § 1367(a) (West Supp.1991): "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder ... of additional parties." Claims are part of the same constitutional case if they "derive from a common nucleus of operative fact," and "are such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding...." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Sinclair's claims against the crew and his claims against the manufacturers did arise from a common nucleus of operative fact. Both sets of claims are based on the same purported injuries stemming from the same scuba diving incident. Those injuries were allegedly caused by the negligence of both the crew and the manufacturer. Accordingly, we find that Sinclair's claims against the manufacturers fall within the district court's supplemental jurisdiction.

### IV.

In light of our holding that the district court erred in dismissing this action for lack of subject matter jurisdiction, we address Sinclair's two additional contentions on appeal. Sinclair argues that, even if we find the district court had subject matter jurisdiction over this action, we should nevertheless affirm the court's dismissal based on one of the two alternative grounds he raised below.

### A.

■ First Sinclair urges us to affirm the district court's dismissal of the action on the basis of his motion for voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)(2). Voluntary dismissal upon motion of the plaintiff after the defendant has filed its answer falls within the discretion of the district court. *Ferguson v. Eakle,* 492 F.2d 26, 28 (3d Cir.1974). Here the district court did not exercise its discretion to either grant or deny Sinclair's motion for a voluntary dismissal because it dismissed the case for lack of subject matter jurisdiction. While it is true that we can affirm the disposition of the district court on any

grounds raised before that court, we cannot exercise discretion on behalf of the district court. *Erie Telecommunications, Inc. v. City of Erie,* 853 F.2d 1084, 1089 n. 10 (3d Cir.1988) (appellate court may affirm decision of lower court on grounds different than those relied upon by the district court); *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 218 (5th Cir. 1981) (not a proper function of the appellate court to exercise discretion on behalf of district court). Accordingly, we cannot on appeal grant Sinclair's motion in the district court for voluntary dismissal, but the district court will have the opportunity to consider and rule on that motion on remand.[3]

### B.

 Sinclair also sought dismissal of this action in the district court on the ground that he has the right to proceed in state court in order to obtain a jury trial pursuant to the "saving to suitors" provision. 28 U.S.C. § 1333(1) (federal district courts have exclusive jurisdiction over actions in admiralty, "saving to suitors in all cases other remedies to which they are otherwise entitled"). While it is true that the state courts have concurrent jurisdiction over the action, this fact does not strip the federal court of its jurisdiction. *See, e.g., McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910). As we noted previously, the district court dismissed this action solely on the basis of lack of subject matter jurisdiction; it did not consider dismissal on the basis of a pending state court action. As an appellate court, we cannot assume the prerogative of the district court and provide a discretionary ruling where the district court has provided none.

### V.

We hold that this action arising from a scuba diving incident in navigable waters falls within federal admiralty jurisdiction based on our findings that the alleged ac-

tivities of the crew of the vessel transporting the diver create a potential impact on maritime commerce and bear a substantial relationship to traditional maritime activity. We further hold that the claims against the manufacturer of the buoyancy compensator vest arose from a common nucleus of operative fact as the claims against the crew so as to bring the former claims within the court's supplemental jurisdiction. The district court, therefore, erred in dismissing this action for lack of subject matter jurisdiction. We cannot affirm the dismissal on the alternative grounds raised in the district court because they fall within the sound discretion of the district court and that court did not actually exercise its discretion.

We will reverse the dismissal of this action and remand for further proceedings consistent with this opinion. Each party to bear its own costs.

---

**3.** Of course, we express no opinion as to how the district court should exercise its discretion on remand. We do note, however, that the interests of judicial economy would have been better served if the district court had ruled on the alternative grounds raised before it so as potentially to obviate the need to remand.