Patricia POLLY, individually, and as independent personal representative of the estate of Jerry Polly, Plaintiffs,

v.

ESTATE OF Arne E. CARLSON, James E. CARLSON, and Robert A. Carlson, Jointly and Severally, Defendants.

In the Matter of the Complaint of Robert A. CARLSON and James E. Carlson, as co-representatives of Estate of Arne E. Carlson, deceased, Robert A. Carlson and James E. Carlson, individually, all as owners of one 1979 Silverton, 34 foot power boat, hull identification No. STNO2158M791–340 for exoneration from or limitation of liability.

No. 94–CV–71742–DT.
Civ. A. No. 94–CV–71186–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 27, 1994.

Raymond S. Sakis, Troy, MI, for plaintiffs.

Mark W. Peyser, Timmis & Inman, Detroit, MI, for defendants.

### OPINION AND ORDER

FEIKENS, District Judge.

Patricia Polly, individually and as representative of the estate of Jerry Polly, moves to remand to Circuit Court for ·Macomb County in case No. 94–CV–71742–DT and moves to dismiss and to dissolve the stay of state court proceedings in case No. 94–CV–71186–DT. For the following reasons, those motions are granted in part and denied in part.

### I.

These cases arise out of a tragic boating accident. On July 26, 1993, Arne E. Carlson and his long-time friend Jerry Polly set out in Arne's 1979 34′ Silverton powerboat from the Markley Marine on the Clinton River in Mt. Clemens, Michigan for Lake St. Clair. Both men somehow ended up drowned in the waters of Lake St. Clair. They were discovered in bathing suits. According to the Macomb County Sheriff's report, the boat was found some distance away in weeds at the foot of the Mud Hen Canal in Mullet Bay with its engines still running and its shift levers slightly forward of neutral. The propellers were not turning. The vessel's swim platform was down, with a pair of glasses on the deck near the stern. The police also found several empty beer cans onboard, two pairs of shoes, two sets of clothes, and both men's wallets.

Jerry's wife, Patricia Polly, acting both as personal representative of the estate of Jerry Polly and individually (collectively, "Polly"), originally brought a negligence action in Circuit Court for Macomb County against the estate of Arne E. Carlson and Arne's sons James E. Carlson and Robert A. Carlson (the "Carlsons"). Robert and James, as representatives of Arne's estate, and as co-owners of the boat, then filed suit in federal court asking for exoneration from or limitation of liability pursuant to the Limitation of Liability Act ("LOLA"), 46 U.S.C.App. §§ 181–189, a statute, which if applicable, would limit the damages Polly could recover to the value of the Carlsons' boat and cargo (if any). I accordingly ordered the issuance of a monition directing any party claiming damages or losses arising from the incident described in the Carlsons' complaint to file his or her claim with the clerk of this court. The Carlsons, in turn, removed Polly's state court action to federal court. Polly now moves (1) to dismiss the federal limitation action under Fed.R.Civ.P. 12(b)(1) and 12(b)(6); (2) to dissolve the stay of the state court proceedings; and (3) to remand the case to the state court.

### II.

Polly first alleges that maritime jurisdiction is improper in this case because the accident involved a pleasure boat engaged in recreational activity. I disagree with this argument.

28 U.S.C. § 1333 confers upon federal district courts original jurisdiction, exclusive of the state courts, over "[a]ny civil case of admiralty or maritime jurisdiction...." *See Sisson v. Ruby,* 497 U.S. 358, 359, 110 S.Ct. 2892, 2894, 111 L.Ed.2d 292 (1990); *Delta County Ventures, Inc. v. Magana,* 986 F.2d 1260, 1262 (9th Cir.1993); *Sinclair v. Soniform, Inc.,* 935 F.2d 599, 601 (3d Cir.1991). The modern meaning of the term "admiralty

or maritime jurisdiction" is described in a trilogy of U.S. Supreme Court cases: *Sisson*, *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), and *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

In the most recent of these cases, *Sisson*, the Supreme Court held that maritime jurisdiction is appropriate when a " 'potential hazard to maritime commerce arises out of activity that bears a substantial relation to maritime activity....' " *Sisson*, 497 U.S. at 362, 110 S.Ct. at 2895–96 (quoting *Foremost*, 457 U.S. at 675 n. 5, 102 S.Ct. at 2658 n. 5). The Court described a two-pronged inquiry. First, "a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Id.* at 363, 110 S.Ct. at 2896. The Court emphasized that this inquiry does not require courts to determine whether the incident *actually* disrupted commercial activity; instead, the first prong is met if the incident had the *potential* to disrupt. *Sisson*, 497 U.S. at 363, 110 S.Ct. at 2896 (fire onboard a yacht moored at a marina meets first prong of jurisdictional test—despite the fact that no commercial ships were at the marina—because that general *type* of incident is likely to disrupt commercial activity). Under the second prong, "the party seeking to invoke maritime jurisdiction must show a substantial relationship between the activity giving rise to the incident and traditional maritime activity." *Id.* at 364, 110 S.Ct. at 2897. "[T]he relevant 'activity' [for the purposes of the second prong] is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *Id.*

■ The first prong of the *Sisson* test is easily met here. It is undisputed that both Arne and Jerry ended up overboard and that the vessel floated unmanned in navigable waters for more than a day. That men were overboard in an emergency situation by itself is likely to disrupt commercial activity; this event ordinarily occasions both air and sea searches and rescue operations. *See, e.g., Delta County Ventures*, 986 F.2d at 1262 (diving accident on navigable waters meets first prong of *Sisson* test because it was likely to require emergency rescue operations); *Sinclair*, 935 F.2d at 602 (crew's failure to treat scuba diver suffering from the bends meets first prong of the *Sisson* test because of "[t]he possibility that commercial vessels would be diverted to respond to ... a distress signal"). Similarly, leaving a vessel to float unmanned in open water has the potential to disrupt commercial navigation. *Cf. Foremost*, 457 U.S. at 675, 102 S.Ct. at 2658 (jurisdiction proper over collision between two pleasure boats because of the potential to disrupt commercial maritime activity).

■ The second prong of the *Sisson* test—whether there is a substantial relationship between the activity giving rise to the incident and traditional maritime activity—presents a more difficult question because the term "activity," as used in the second prong, brings with it an ambiguity regarding the level of generality upon which a court should focus. *See, e.g., Delta County Ventures*, 986 F.2d at 1264–65 (Kozinski, J., dissenting).[1] The U.S. Court of Appeals for the Ninth Circuit's decision in *Delta County Ventures* provides a good example of the problems inherent in this inquiry. In that case, a thirteen-year-old boy became a quadriplegic after diving from the deck of a houseboat and striking an underwater object. The owner of the houseboat sued in federal court under LOLA, seeking to limit damages to the value of the vessel, and the boy moved to dismiss, arguing that the court lacked admiralty jurisdiction. Although the court agreed with the boat owners that the first prong of the *Sisson* inquiry was met, it nevertheless ruled that jurisdiction was improper under *Sisson*'s second prong. It reasoned that "aquatic recreation off a pleasure boat was the activity that gave rise to the incident here" and that the boat owners failed to show "a substantial relationship between aquatic

---

1. In theory, at least, one *always* could define the activity giving rise to an incident on a sufficiently low level of abstraction such that *no* activity would ever have a substantial relationship to traditional maritime activity. *Id.* at 1265.

recreation off a pleasure boat and traditional maritime activity." *Delta County Ventures,* 986 F.2d at 1262–63.

Judge Kozinski dissented, arguing that the relevant activity should be defined "more generally as the anchoring and mooring of the boat at the time of the accident." *Id.* at 1264. The activity so described easily qualified as bearing a substantial relationship to traditional maritime activity. Although Judge Kozinski "recognize[d] that disputes about the appropriate level of generality always carry with them a certain degree of arbitrariness," he maintained that under *Sisson,* the proper inquiry is "whether the injury took place on or about a vessel engaged in traditional maritime activity." *Id.* at 1264–65.

Most cases support Judge Kozinski's approach. In *Price v. Price,* 929 F.2d 131 (4th Cir.1991), for example, the U.S. Court of Appeals for the Fourth Circuit found jurisdiction when a passenger in a small pleasure boat was injured while attempting to disembark on a beach. (Plaintiff claimed that the boat driver had approached the beach at excessive speed, causing a large wake, which caused her to lose balance.) The court ruled that the relevant activity was the boat operator's navigation: a traditional maritime activity. *Id.* at 136. Similarly, in *Sisson,* the incident, a fire, started in the yacht's washer/dryer unit. The Court did not rule that operating the washer/dryer was the relevant activity, however. Instead, the Court ruled that the relevant activity was "the storage and maintenance of a vessel at a marina on navigable waters." *Sisson,* 497 U.S. at 365,

110 S.Ct. at 2897; *see also Sinclair,* 935 F.2d at 602 (jurisdiction proper over scuba diving accident because the relevant activity was the transport of passengers for compensation, an activity which bears a substantial relationship to traditional maritime activity); *Nicholas v. Grand Haven Bd. of Light & Power,* 1990 WL 599164, at *3, 1990 U.S.Dist. LEXIS 11659, at *8 (W.D.Mich.1990) (federal jurisdiction proper in a case where pleasure boat operator received electric shock when his sail boat came into contact with a high voltage wire because the relevant activity was "sailing [the] vessel to port for servicing").[2]

Polly attempts to describe the relevant activity as swimming, diving and/or falling off a pleasure boat, claiming that characterizing the activity in this fashion would defeat the Carlsons' claim to federal jurisdiction.[3] As the Carlsons pointed out during oral argument, however, we simply do not know how this accident happened; all we know at this point is that the vessel left Mt. Clemens for Lake St. Clair, the men's bodies were found, and the boat was abandoned. Given this scant information and given the early stage of this litigation, I conclude that the relevant activity was the navigation of the vessel from Mt. Clemens to Lake St. Clair. Navigation is a traditional maritime activity. *See, e.g., Price,* 929 F.2d at 136. On the information available, I accordingly rule that maritime jurisdiction is proper.[4]

### III.

Polly next argues that I should dismiss the LOLA claim because LOLA only permits boat owners to limit their liability for loss,

**2.** Further supporting Judge Kozinski's approach is the emphasis in *Sisson* on the "need for uniform rules of maritime conduct and liability...." *Sisson,* 497 U.S. at 367, 110 S.Ct. at 2898. This expressed need for bright-line rules is best served by evaluating questions about maritime jurisdiction at a general level. Focusing on specifics—and permitting states to have jurisdiction—could lead to a hodge-podge of results depending on the local jurisdiction.

**3.** Polly's attorney claimed at oral argument that I should assume that the men were swimming because they were clad in bathing suits. The Carlsons' attorney pointed out, however, that the drownings occurred during warm weather and that wearing bathing suits would not be uncom-

mon even if the two men were not engaged in recreational swimming.

**4.** I need not decide at this point whether Polly's claim that the men were engaged in recreational swimming or diving from a pleasure boat, if true, would suffice to defeat jurisdiction. As I noted in the text, the U.S. Court of Appeals for the Ninth Circuit ruled in *Delta County Ventures* that admiralty jurisdiction is not appropriate in such circumstances. Other courts, however, have found admiralty jurisdiction in recreational boating accident cases. *See, e.g., Sinclair,* 935 F.2d at 602–03 (finding jurisdiction in case involving a scuba diving accident); *Price,* 929 F.2d at 133–36 (finding jurisdiction where injury occurred when a passenger disembarked a small pleasure boat).

damage, or injury if the act, damage or injury occurred without the owner's privity or knowledge or malfeasance and/or nonfeasance. 46 U.S.C.App. § 183(a). She maintains that any occurrence involving a pleasure craft operated by an owner (Arne here) is, as a matter of law, within the owner's "privity of knowledge." Polly argues further that I should dismiss the LOLA claim even if Jerry Polly and not Arne operated the vessel because LOLA affords no protection to an owner of a pleasure boat for his alleged negligent entrustment of a boat to another. *Joyce v. Joyce,* 975 F.2d 379, 383–85 (7th Cir.1992).

■ There is some case law supporting Polly's position. *See, e.g., In re Ingoglia,* 723 F.Supp. 512, 515 (C.D.Cal.1989) (holding that the owner of a motorboat was not entitled to limit his liability under the Act for injuries to a passenger when the boat struck a wave because the boat was controlled, maintained, and operated by the owner at the time of the injury); *In re Follett,* 172 F.Supp. 304, 305 (D.Tex.1958) (stating that an "owner who operates his own pleasure craft is not entitled to limit as any occurrence would clearly be within his privity or knowledge"). I nevertheless reject Polly's proposed rule because it would prevent owners from asserting LOLA even in situations where the evidence reveals that their conduct was in all respects prudent. *See, e.g., M/V Sunshine II v. Beavin,* 808 F.2d 762, 765 (11th Cir.1987) (that owner operated boat or was present during accident does not, alone, prevent the owner from invoking LOLA); *In re Cirigliano,* 708 F.Supp. 101, 103–04 (D.N.J.1989) (same). I accordingly rule that Arne's presence on the boat is not necessarily fatal to the defendants' right to assert LOLA.

■ Determining whether LOLA applies instead requires me to go through a two-step analysis. *Hercules Carriers, Inc. v. Florida,* 768 F.2d 1558, 1563–64 (11th Cir. 1985). First, I must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, I must determine whether the shipowner had actual knowledge or privity of those same acts of negligence or conditions of seaworthiness. *Id.* Although the Carlsons bear the ultimate burden of proof as to their lack of privity or knowledge, Polly first must satisfy the initial burden of proving negligence or unseaworthiness. *Id.* at 1564. Here, at this early stage in the proceedings, no one has sufficient knowledge either to determine what caused this accident or to conclude that Arne had privity or knowledge of the alleged acts of malfeasance contributing to the accident. Determining whether LOLA applies accordingly must await further discovery.

### IV.

Polly finally claims that I should dissolve the stay of state court proceedings and remand case No. 94–CV–71742–DT to state court both because the estate of Jerry Polly is a "single" claimant which has invoked state law remedies (Patricia Polly apparently is willing to subordinate her individual claims in favor of Jerry's estate) and because the limitation fund exceeds the total amount of the multiple claims against the owner.

28 U.S.C. § 1333(1) contains a "saving to suitors" clause which protects suitors' attempts to obtain common law remedies in state court. Courts have invoked the savings-to-suitors clause in some cases to remand aspects of LOLA cases to the state courts for adjudication. *Langnes v. Green,* 282 U.S. 531, 539–44, 51 S.Ct. 243, 246–48 (1931); *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.,* 678 F.2d 636, 643 (6th Cir.1982). As the U.S. Court of Appeals for the Sixth Circuit explained in *S & E Shipping:*

> The purpose of the *concursus,* the proceeding before the admiralty court in which all competing claims must be litigated, is to provide for a marshalling of assets and for a setting of priorities among claims where the asserted claims exceed the value of the vessel and its freight. "[T]he purpose of the limitation proceedings is not to prevent a multitude of suits but ... to provide a marshalling of assets—the distribution pro rata of an inadequate fund among claimants, none of which can be paid in full."

*Id.* at 642 (quoting *In re Moran Transp. Corp.,* 185 F.2d 386, 389 (2d Cir.1950), *cert.*

*denied,* 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951)).

As a result, single claimants enjoy the right to proceed against a vessel owner in the forum of their choice, while the federal court retains exclusive jurisdiction to determine the issues relating to the limitation of liability under LOLA. *Langnes,* 282 U.S. at 539–44, 51 S.Ct. at 246–48; *S & E Shipping,* 678 F.2d at 643. This does not mean that LOLA no longer applies in such cases, however. Single claimants may only pursue their common-law remedies in state court if they concede that the district court retains exclusive jurisdiction to determine whether liability is limited. *Id.* at 643.

Polly also contends that a *concursus* is improper because the limitation fund is less than the total amount of the multiple claims she has against the Carlsons. As the U.S. Supreme Court noted in *Lake Tankers Corp. v. Henn,* 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957), LOLA was not intended to "deprive suitors of their common-law rights, even where the limitation fund is known to be more than adequate to satisfy all demands upon it...." *Id.* at 152, 77 S.Ct. at 1272. I accordingly must dissolve the injunction against the state court suit if the limitation fund exceeds the total amount of the multiple claims against the owner. *See S & E Shipping Corp.,* 678 F.2d at 643.

Remand is inappropriate at the present time, however, because there is more than one claim and because it is unclear whether Polly's damages are less than the value of the vessel.[5] Still, the case law makes clear that I must dissolve the injunction against the state court proceedings and remand case No. 94–CV–71742–DT to state court if Polly files an appropriate stipulation which acknowledges either that the estate is the sole claimant or that her claims are equal or less than the LOLA limitation. *See, e.g., id.* at 643 & n. 13. That stipulation also must acknowledge that I retain jurisdiction to determine liability issues. Polly also must waive any res judicata arguments based on

the state court's judgment. *S & E Shipping,* 678 F.2d at 643 n. 13.

## V.

For the foregoing reasons, IT IS ORDERED THAT Polly's motion to dismiss IS HEREBY DENIED. She may submit an appropriate order regarding her motion to dissolve the stay of her state court proceedings and her motion to remand. Those orders will be entered upon receipt of an appropriate stipulation conforming with the requirements set out in *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.,* 678 F.2d 636 (6th Cir.1982).

---

**5.** The Carlsons claim that the value of the vessel was at most $20,500. The estate's damages, on the other hand, might be much higher: Jerry Polly apparently was only 45 years old, earned between $40,000 and $50,000, had a surviving spouse and two daughters.